ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Sang Kash Company ) ASBCA No. 60532
)
Under Contract No. W91B4N-15-D-8013 )

APPEARANCE FOR THE APPELLANT: Mr. Abdul Bari
President

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Ronald M. Herrmann, JA
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW
ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This is an appeal from the Joint Theater Support Contracting Command's
(JTSCC or Army) termination for default against Sang Kash Company (Sang Kash or
appellant). The Army terminated its contract for the supply of bulk concrete with Sang
Kash after Sang Kash lost its base access privileges to Bagram Airfield, Afghanistan.
Pending before the Board is the Army's motion for summary judgment and appellant's
cross-motion. Clause 5152.225-5916 was incorporated into the contract by bilateral
modification, which required appellant to maintain access to the installation in order to
perform work under awarded task orders (R4, tab 14). After the Senior Commander of
Bagram Airfield Afghanistan revoked appellant's base access, the contracting officer
terminated the contract for default. Appellant appealed the termination for default
arguing that: (i) its base access privileges were revoked as a means for the government to
nullify its contract rights; and (ii) appellant was deprived due process rights.

We grant the government's motion for summary judgment and deny the appeal.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Contract No. W91B4N-15-D-8013 (the contract) was a requirements contract
awarded to Sang Kash on July 8, 2015, by CENTCOM (US Central Command)-Joint
Theater Support Contracting Command (JTSCC) to obtain bulk concrete for Bagram
Airfield, Parwan Province, Afghanistan (R4, tab 1 at 50). The contract incorporated by
reference FAR 52.233-1, DISPUTES (MAY 2014) and FAR 52.249-10, DEFAULT (FIXED-
PRICE CONSTRUCTION) (APRIL 1984) (R4, tab 1 at 32-33).

2. The contract required Sang Kash to supply and deliver quantities of bulk concrete as requested by JTSCC. The contract did not include a guaranteed minimum quantity and explicitly stated that the quantities set forth in the schedule were estimates. The following clauses were incorporated into the text of the contract: 52.216-19, ORDER LIMITATIONS (OCT 1995) and 52.216-21, REQUIREMENTS (OCT 1995) (R4, tab 1 at 33-35). Clause 52.216-19 states, in relevant part: "(a) Minimum order. When the Government requires supplies or services covered by this contract in an amount of less than **0 cm** (quantity), the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract" (R4, tab 1 at 34) (emphasis in original). Clause 52.216-21 states, in relevant part:

> (a) This is a requirements contract for the supplies or services specified.... The quantities of supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders in the quantities described as "estimated" or "maximum" in the Schedule, that fact shall not constitute the basis for an equitable price adjustment.

*Id.* The statement of work (SOW), written into the contract, states in Section 1.1.1 that the purpose of the contract is: **"to obtain bulk concrete for Bagram Airfield. All other requirements listed in the Statement of Work (SOW) are secondary and not guaranteed."** (R4, tab 1 at 50) (emphasis in original) SOW Sections 2.23-2.34 address access to military installations and bases in Afghanistan (R4, tab 1 at 56-57). SOW Section 2.28 states that "Contracting officers may terminate contractors when contractors lose the ability to access the work site" (R4, tab 1 at 57).

3. Bilateral Modification No. P00002, dated November 10, 2015, added Central Command (CENTCOM) clause 5152.225-5916 MANDATORY ELIGIBILITY FOR INSTALLATION ACCESS (OCT 2015) in full text, to the contract (R4, tab 14). The clause required the prime contractor and all subcontractors to be initially eligible for installation access to a U.S. and/or coalition installation, and to remain eligible during the entire period of contract performance. The clause stated, in relevant part:

5152.225-5916
MANDATORY ELIGIBILITY FOR INSTALLATION
ACCESS
(OCT 2015)

> (a) U.S. and Coalition Commanders possess inherent authority to maintain law and order, provide security, and impose discipline necessary to protect the inhabitants of U.S.

2

and/or Coalition installations, U.S. and Coalition personnel operating outside of installations, and U.S. or Coalition-funded developmental projects in Afghanistan. This authority allows commanders to administratively and physically control access to installations and/or project sites, and to bar contractors - including prime contractors, subcontractors at any tier, and any employees, from an installation or site. A commander's inherent force protection (FP) authority is independent of an agency's contracting authority, and it may not be superseded by any contractual term or provision.

(b) The prime Contractor/Vendor acknowledges that: submission of a bid, offer, or a proposal; acceptance of contract award of any type; or continuing effort under any contract that includes this clause; requires that the prime Contractor/Vendor, and all subcontractors under any affected contracts be initially eligible -- and remain eligible during the entire period of contract performance to include any warranty period -- for installation access to a U.S. and/or Coalition installation, regardless of whether the performance will take place on or off a U.S. or Coalition installation.

....

(2) Failure to be approved in JCCS -- and thereby be eligible for installation access at the prime and subcontractor levels -- or failure to inform the contracting officer of the names of all prospective subcontractors (or provide a negative reply), may render the offeror/contractor ineligible for award or continued performance. Additionally, any firm that is declared ineligible for installation access will be deemed non-responsible until such time as that firm is again deemed eligible by the appropriate access approval authority.

(d) Installation access determinations arise from the Combatant Commander's inherent authority and are separate and distinct from any law, regulation, or policy regarding suspension and debarment authority. Contractor queries or requests for reconsideration related to U.S. or Coalition installation base access eligibility must be directed to the authority responsible for base access decisions.

(R4, tab 14 at 2)

3

4. By letter dated March 25, 2016, the Bagram Support Group (BSG) Commander of Bagram Airfield revoked Sang Kash's access to Bagram Airfield, stating, in relevant part:

> **Base Access Denial from Bagram Airfield, Afghanistan**...
>
> ...
>
> 2. Pursuant to the above references and my authority delegated to me by the Senior Commander of Bagram Airfield, you are hereby base access denied from Bagram Airfield, Afghanistan effective immediately. You are granted provisional access in order to remove personnel and equipment from the base for a time period not to exceed ten (10) days from the date of this memorandum.
>
> 3. Violation of this order may result in criminal prosecution for trespassing under reference a. You may request, within (60) days of receipt of this notice, that this order be reconsidered by writing me through the United States Forces-Afghanistan (USFOR-A) Force Protection Cell.
>
> ...
>
> 5. Pursuant to USFOR-A/RS policy, your base access denial from this installation will apply to all USFOR-NRS installations in the Combined Joint Operations Area-Afghanistan. (CJOA-A), [sic] and will be uniformly enforced by each installation.

(R4, tab 19) (emphasis in original)

5. Pursuant to contract Modification No. P00003, dated March 29, 2016, the contracting officer (CO) terminated the contract for default for "[v]iolation of Contract Clause 5152.225-5916 Mandatory Eligibility for Base Access" and cited to FAR clause 52.249-10 (Default) (R4, tab 21 at 2). The final decision included the standard appeal rights set forth at FAR 33.211(a)(4)(v), CONTRACTING OFFICERS DECISION (R4, tab 21 at 2-3). The modification is countersigned as being received by Sang Kash's representative (R4, tab 21 at 1, 3).

6. By letter dated March 30, 2016, the CO explained Modification No. P00003 to appellant, stating that Sang Kash's status in the Joint Contracting and Contingency

System (JCCS) had not been approved and its "Vendor Vetting Status" was an "Unacceptable Risk" (R4, tab 20).

7. By email to the contracting officer dated April 10, 2016, Sang Kash's representative requested that the BSG Commander of Bagram Airfield reconsider its base access denial. Attached to its email were supporting documents. (R4, tab 25) There is no evidence in the record that Sang Kash asserted that it was an approved contractor in JCCS.

8. On April 13, 2016, Sang Kash appealed the termination to the Board. The Board docketed Sang Kash's appeal as ASBCA No. 60532.

9. By letter dated May 10, 2016, the BSG Commander of Bagram Airfield denied Sang Kash's request for base access reconsideration, stating, in relevant part:

> After reviewing your request and the underlying basis for denial, I have determined that the original denial was based on substantiated information. Additionally, I have not been provided any supplementary information which would alter my original decision. As the BSG Commander, I have the inherent authority to protect my forces and you have been assessed as a risk to the welfare of the installation's personnel. Your request for reconsideration is denied and your base access denial status is affirmed.

(R4, tab 27)

## DECISION

### I.    Standard Of Review For Motion For Summary Judgment

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Colonna's Shipyard, Inc.*, ASBCA No. 59987 *et al.*, 16-1 BCA ¶ 36,518 at 177,902. A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Colonna's Shipyard, Inc.*, 16-1 BCA ¶ 36,518 at 177,902. The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); *Colonna's Shipyard, Inc.*, 16-1 BCA ¶ 36,518 at 177,902. Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not

5

conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984); *Colonna's Shipyard, Inc.*, 16-1 BCA ¶ 36,518 at 177,902.

## II.    The Parties' Contentions

The government moves for summary judgment arguing "there is no dispute that the appellant failed to maintain access to the base where it was obligated to perform" (gov't mot. at 1). The government contends that the contract was bilaterally amended to include CENTCOM clause 5152.225-5916 (Mandatory Eligibility for Installation Access) requiring "that Sang Kash must maintain access to the installation in order to perform work under awarded task orders" (gov't mot. at 7). "The Government terminated Sang Kash because the base commander took independent action for a valid, sovereign reason to ensure force protection....[and] the contracting officer properly terminated Sang Kash for default" (gov't mot. at 7-8).

Although not clearly articulated by appellant, the Board interprets its reply to the government's motion and understands its argument to be that the BSG Commander, who revoked appellant's base access, was not separate from the contracting officer and the contract was terminated to get around the guaranteed concrete orders "for convenience" of the government (app. resp. at 1-5, 10). Appellant states that the awarded contract was a "[g]uaranty for bulk concrete" estimated to be 15,000 cubic yards while JTSCC had purchased only 128 cubic meters through the base year (app. resp. at 1). In addition, the Board further interprets appellant's argument to include a due process concern. Appellant argues that "we have the right to know why our installation access was denied," as the BSG Commander's base access denial did not articulate specific facts in his revocation and he summarily determined that appellant was a security "risk" (app. resp. at 9). Appellant argues that although its base access was revoked, "most of our on[-]site key personnel are hired immediately by another company inside Bagram Air base." Appellant listed the names and badge numbers of six employees who were allegedly hired by another company and gained access to Bagram Air Base (app. resp. at 10). Appellant requests that "the Board should enter judgment in favor of ... [it] given that there is no reason that Sang Kash Company posses[s a] risk to [the] welfare of installation personnel but a falsified information, misuse of authority, and favoritism lead to termination of [the] contract" which we interpret as a cross-motion for summary judgment (app. resp. at 10).

## III.    There Are No Material Facts In Dispute

Appellant alleges that the BSG Commander revoked its base access as a method to terminate the contract for default, because JTSCC was failing to order the requisite guaranteed amount of concrete. It is undisputed that the contract is a requirements contract and did not include a minimum quantity. Nowhere in the contract does it state a

6

minimum amount of concrete will be delivered and installed during the base year. The contract expressly states that the bulk concrete contract line item numbers are estimates and are not guaranteed. (SOF ¶ 2) The record does not support appellant's versions of the facts sufficient to show material facts are in dispute, nor does the record support appellant's allegations of alternative reasons for the contract termination. Appellant has not provided any evidence that JTSCC intended to nullify its contract rights or that the termination provided JTSCC an economic advantage. The government has met its burden of establishing the absence of disputed material facts. *New Era Contract Sales, Inc.*, ASBCA No. 56204, 09-2 BCA ¶ 34,147 at 168,795; *Emerald Town Group Logistic Services*, ASBCA Nos. 60300, 60302, 17-1 BCA ¶ 36,709 at 178,753-55.

## IV. Discussion

It is undisputed that the parties bilaterally agreed to incorporate CENTCOM clause 5152.225-5916, which required the contractor to maintain its base access eligibility during the entire period of contract performance, into the contract (SOF ¶ 3). CENTCOM clause 5152.225-5916 provides that contractors who were found ineligible for base access "may render the []contractor ineligible for... continued performance..." (*id.*). It is undisputed that the contract required appellant to maintain access to the site or the contract could be terminated for default (SOF ¶¶ 2, 3). Acting upon the commander's authority, appellant's base access privileges were revoked (SOF ¶ 4). Appellant does not dispute that its base access was revoked and that it failed to maintain access to Bagram Airfield, per the contract.

Appellant's allegations that JTSCC terminated the contract as a means to get around the "guaranteed" or minimum requirements of bulk concrete orders (app. resp. at 1, 9) are not supported by the contract or the record (SOF ¶¶ 3, 4). Clause 52.216-19 stated that JTSCC is not obligated to order supplies/services if it has no need (SOF ¶ 2). In support of its opposition, appellant offered exhibits that do not add anything to the discussion nor do they show any facts that may be in dispute regarding the termination (app. resp. at 3-8).

Appellant has raised a due process concern, arguing "we have the right to know why our installation access was denied" (app. resp. at 9). Due process normally requires that a contractor receive notice of the charges impugning its integrity and an opportunity to be heard. *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 968 (D.C. Cir. 1980); *Leslie & Elliott Company, Inc. v. Garrett*, 732 F.Supp. 191, 198 (D.D.C. 1990). However, the requirements of due process vary given the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

Installation access decisions are military command decisions. It is well established that the commanding officer of a military base has wide discretion as to

whom he or she can exclude from the base. *Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 893-94 (1961) (recognizing power of post commander recognized when revocation of employee's security access to installation upon the security officer's determination that she failed to meet the security requirements of the activity; "It is well settled that a Post Commander can, under the authority conferred on him by statutes and regulations, in his discretion, exclude private persons and property therefrom, or admit them under such restrictions as he may prescribe in the interest of good order and military discipline."); *Garco Construction Inc.*, ASBCA No. 57796, 14-1 BCA ¶ 35,512 at 174,073 (several contractor's personnel installation access were revoked after implementing a policy to deny base access to individuals "having outstanding wants or warrants, sex offenders, violent offenders, those who are on probation, and those who are in a pre-release program" where "the purpose of [the] policy was to ensure the safety of personnel on the installation and preserve the good order and discipline on the installation."); *Conner Brothers Construction Company, Inc.*, ASBCA No. 54109, 07-2 BCA ¶ 33,703 at 166,876; 166,878 (affirmed by *Conner Brothers Construction Company, Inc. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008) (allowing base commander to deny access to construction company to installation site for 41 days following the terrorist attacks of September 11, 2001, which "the purpose of the order was to serve national policy objectives, not to relieve the Corps of its contractual obligations."); *Emerald Town Group Logistic Services*, 17-1 BCA ¶ 36,709 at 178,753-54 (termination after contractor's base access was revoked after a determination that "its operations have been determined to be a force protection threat to US and Coalition Forces at Kandahar Airfield."); *Gargoyles, Inc.*, ASBCA No. 57515, 13 BCA ¶ 35,330 at 173,415-16 (Contract was properly terminated when the contractor was unable to obtain access to U.S. military installation in Iraq to deliver 56 light armored vehicles).

A determination of installation access is a matter of inherent command authority and is not at the discretion of the contracting officer or this Board. The Board will not question a military commander's revocation of base access unless appellant can provide substantiated facts to support the contract was terminated to nullify contract rights or to provide the government with economic gain. *Conner Brothers Construction Company*, 550 F.3d at 1374-75. In this appeal, because there was no required minimum quantity the BSG Commander's decision to revoke appellant's base access would not have nullified appellant's contract rights or provided JTSCC an economic advantage. The fact that the actions of the government entity that controlled base access were beyond appellant's control is not a valid excuse for non-performance. *Emerald Town Group Logistic Services*, 17-1 BCA ¶ 36,709 at 178,753-54.

## CONCLUSION

The government's motion for summary judgment is granted. The appeal is denied.

Dated: June 11, 2019

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60532, Appeal of Sang Kash Company, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9